ROBERT HANSEN TRUCKING, INC., Plaintiff-Appellant-Petitioner,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Department of Industry, Labor & Human Relations, and Michael R. Overholt, Defendants-Respondents.

Supreme Court

No. 83–2294. Argued September 6, 1985.—
Decided November 26, 1985.

(Also reported in —— N.W.2d ——.)

324

For the plaintiff-appellant-petitioner there were briefs by *Daniel R. Dineen*, Milwaukee, and oral argument by *Mr. Dineen*.

For the defendant-respondent, Labor and Industry Review Commission, there was a brief and oral argument by *Glenn E. Kelley*, Madison.

Amicus curiae brief was filed by *Jon P. Axelrod, Douglas L. Flygt* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C.*, Madison, for Wisconsin Motor Carriers Association.

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals which affirmed the judgment of the circuit court for Walworth County, Circuit Judge John J. Byrnes. See *Robert Hansen Trucking, Inc. v. LIRC*, 121 Wis. 2d 509, 360 N.W.2d 698 (Ct. App. 1984). The circuit court had affirmed a decision of the Labor and Industry Review Commission (LIRC) that Michael Overholt was an employee of Robert Hansen Trucking, Inc., within the meaning of sec. 108.02(3), Stats. 1981–82, rendering Robert Hansen Trucking liable for payment of unemployment compensation benefits to Michael Overholt. We reverse the decision of the court of appeals.

This case involves a fairly common employment configuration: a principal employer, an intermediate employer, and a claimant. Hansen Trucking is the principal employer; Don Laupp Trucking, a contractor, is the intermediate employer; and Michael Overholt, an individual hired by the contractor, is the claimant. The issue is whether Hansen Trucking or Laupp Trucking shall be liable for paying Overholt's unemployment benefits. Put another way, is Overholt an employee of Hansen Trucking or of Laupp Trucking, as the word "employee" is defined in sec. 108.02(3) of the Unemployment Compensation Act.

We hold that when a contractor, in fulfilling a contract with a principal, hires an individual for employment for which the contractor is subject to the con-

tribution or reimbursement provisions of chapter 108 (sec. 108.02(3)(e), Stats. 1981–82), the individual is an employee of the contractor and not of the principal. Accordingly, an individual's status as an employee of the principal depends on whether the intermediate employer is a contractor within paragraph (e) of sec. 108.02(3). Because LIRC did not decide Laupp Trucking's status under paragraph (e), we reverse the decision of the court of appeals and remand the matter to LIRC.

The facts are not in dispute. Robert Hansen Trucking, Inc., an interstate motor carrier, entered into a "Motor Vehicle Lease Agreement" with Don Laupp Trucking. The contract required Laupp Trucking to furnish a tractor and driver and pay the driver's compensation, the fuel costs, the permit fees, and other specified charges. Hansen Trucking would pay Laupp Trucking 82 percent of the gross revenue of each haul. As required by federal law, the contract provided that Hansen Trucking "shall have exclusive possession, control and use of the equipment for the duration of the lease and shall assume complete responsibility for the operation of the equipment for the duration of this lease." [1]

Laupp Trucking hired Overholt to drive the tractor and paid his salary less amounts withheld for taxes. Both Laupp Trucking and Hansen Trucking exercised control over various aspects of Overholt's driving. Overholt generally received work assignments from Hansen Trucking's dispatcher, but occasionally Laupp Trucking would choose the loads. Laupp Trucking gave Overholt

[1] In *Star Line Trucking Corp. v. DILHR*, 109 Wis. 2d 266, 325 N.W.2d 872 (1982), we determined that the ICC-mandated provision in the equipment lease between Star Line and owner-operators which provided Star Line with exclusive control of the trucks leased from the owner-operators did not alone establish the requisite control to render the owner-operators employees of Star Line.

driving and maintenance instructions and sometimes set the routes which Overholt would take. Hansen Trucking gave Overholt instructions on completing trip reports.

Overholt drove for about 5 weeks; Laupp Trucking then terminated Overholt's services, terminated the contract with Hansen Trucking, and proceeded to sell the tractor.

Overholt applied for unemployment compensation and named Laupp Trucking as his employer. The Department of Industry, Labor and Human Relations (DILHR) and the LIRC Appeal Tribunal determined that Hansen Trucking was liable for Overholt's unemployment benefits. Hansen Trucking sought review by the circuit court, secs. 108.09(7) and 102.23, Stats. 1981–82, which affirmed LIRC's decision. The court of appeals affirmed the judgment of the circuit court.

Both Hansen Trucking and LIRC agree that sec. 108.-02(3), Stats. 1981–82, governs this case. Sec. 108.02 (3) defines the word "employee" for purposes of the Unemployment Compensation Act and provides as follows:

"(a) 'Employee' means any individual who is or has been performing services for an employing unit, in an employment, whether or not the individual is paid directly by such employing unit; except as provided in par. (b) or (e).

"(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if the employing unit satisfies the department as to both the following conditions:

"1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his services both under his contract and in fact; and

"2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged.

"(c) This subsection shall be used in determining an employing unit's liability under the contribution provisions of this chapter, and shall likewise be used in determining the status of claimants under the benefit provisions of this chapter.

"(d) Any individual who is, under this subsection, an 'employe' of a given employing unit shall be deemed 'employed' by that employing unit for the purposes of this chapter.

"(e) Paragraph (a) does not apply to a contractor who, in fulfillment of a contract with an employing unit, employs any individual in employment for which the contractor is subject to the contribution or reimbursement provisions of this chapter."

The central dispute between DILHR and Hansen Trucking involves the meaning and interrelationship of paragraphs (a) and (e) of sec. 108.02(3). In order to explain the parties' positions regarding the meaning of these paragraphs, we must discuss the amendments to sec. 108.02(3), which the legislature adopted in 1980.[2]

The 1980 amendments added paragraph (e) and amended paragraph (a) by repealing the last sentence. Prior to the 1980 amendments paragraph (a) set forth the circumstances under which an individual hired by a contractor would be deemed an employee of the principal. Under paragraph (a) a principal could be liable for unemployment compensation for individuals hired by a contractor if the contractor was an employee and was not an employer subject to the contribution provisions of chapter 108. The pre-1980 version of paragraph (a) provided as follows:

"(3) (a) 'Employee' means any individual who is or has been performing services for an employing unit, in an employment, whether or not he is paid directly by such employing unit; except as provided in par. (b). *If a contractor performing services for an employing unit is an employee under this subsection and not an*

_____
[2] Laws of 1979, ch. 221, secs. 560r, 560w.

*employer subject to the contribution provisions of this chapter, a person employed by the contractor in fulfillment of his contract with the employing unit shall be considered the employe of the employing unit."* (Emphasis supplied.)

In interpreting the pre-1980 version of sec. 108.02(3) (a) and (b), this court concluded that the contractor could be an employee of the principal for his or her unemployment compensation purposes and also be a covered employer. Furthermore, this court held that if the contractor was a covered employer, the individuals hired by the contractor were considered employees of the contractor, not employees of the principal, for the purposes of sec. 108.02(3). *See Price County Telephone v. Lord,* 47 Wis. 2d 704, 715–17, 719, 177 N.W.2d 904 (1970); *Sears, Roebuck & Co. v. ILHR Department,* 90 Wis. 2d 736, 753, 280 N.W.2d 240 (1979). Thus, under the pre-1980 statute it would have been appropriate to to determine the status of Laupp Trucking in order to determine whether Overholt was an employee of Hansen Trucking or of Laupp Trucking.

The question the parties present is whether the repeal of the second sentence of paragraph (a) and the creation of paragraph (e) eliminate the necessity of making a determination of the status of a contractor to determine whether a hired individual is an employee of the principal or of the contractor. For the reasons we set forth, we conclude that the 1980 amendments did not negate the necessity of making this determination.

According to Hansen Trucking, the legislature's objective in amending paragraph (a) and in creating paragraph (e) was to provide that if a contractor is a covered employer, the contractor is not an employee of the principal. Hansen Trucking further contends that in adopting the 1980 amendments the legislature did

not intend to change the employee status of individuals hired by a contractor.

Hansen Trucking urges that Laupp Trucking is a contractor who, in fulfillment of a contract with Hansen Trucking, employs Overholt in employment for which Laupp Trucking is subject to the contribution or reimbursement provisions of chapter 108. Sec. 108.02(3) (e).[3] Accordingly, argues Hansen Trucking, neither Laupp Trucking nor Overholt is an employee of Hansen Trucking for purposes of chapter 108.

LIRC contends that the analysis forwarded by Hansen Trucking would continue to give effect to language deleted from paragraph (a) in 1980 and would be contrary to the plain meaning of paragraph (e). LIRC claims that the plain meaning of sec. 108.02(3)(a) is that an individual who performs service for an employing unit (the principal) is an employee of that unit and that an individual may be excepted as an employee of the principal only if the principal demonstrates that the employee satisfies both tests set forth in sec. 108.02 (3)(b).

Applying this interpretation of sec. 108.02(3) to this case, LIRC concluded that Overholt performed services for Hansen Trucking and was therefore an employee of Hansen Trucking under sec. 108.02(3)(a). Apparently LIRC further concluded that Overholt did not come within the paragraph (b) exception. Although LIRC did not refer to paragraph (e) in its written memorandum decision, LIRC now contends that paragraph (e) is not relevant to this case. Paragraph (e), accord-

---

[3] For ease of reference, we shall refer to a contractor who in fulfillment of a contract with an employing unit employs an individual in employment for which the contractor is subject to the contribution or reimbursement provisions of chapter 108 as covered employer. We shall refer to a person employed by the contractor in fulfillment of the contract with an employing unit as the hired individual or the individual hired by the contractor. Sec. 108.02(3)(e).

ing to LIRC, applies only to determining the employee status of a contractor. In this case Overholt is not a contractor; he is an individual hired by a contractor.[4]

The resolution of this case obviously depends on how section 108.02(3), Stats. 1981–82, should be interpreted.

The initial question to be considered is this court's scope of review of LIRC's interpretation of the statute.[5] Questions relating to interpretation of statutes are generally characterized as questions of law, and the general rule is that a court is not bound by an agency's conclusions of law. Courts, however, frequently refrain from exercising the power to substitute their interpretation or application of a statute for that of an agency charged with the administration of the law. If the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency's conclusions are entitled to deference by the court. Our cases describe various degrees of authoritative weight which may be given to an agency's interpretation or application of a statute, depending on the circumstances. *West Bend Education Ass'n v. WERC*, 121 Wis. 2d 1, 11–12, 357 N.W.2d 534 (1984); *Nottelson v. ILHR Dept.*, 94 Wis. 2d 106, 287 N.W.2d 763 (1980); *Pabst v. Department of Taxation*, 19 Wis. 2d 313, 322–324, 120 N.W.2d 77 (1963).

In reviewing decisions of DILHR concerning the interpretation of the unemployment compensation law, we

---

[4] LIRC's brief acknowledges that LIRC made no finding that Overholt was not a contractor or a covered employer but urges that such findings may reasonably be implied from the decision and the evidence.

[5] The scope of review is the same for the circuit court, for the court of appeals and for this court. *Boynton Cab Co. v. ILHR Dept.*, 96 Wis. 2d 396, 405, 291 N.W.2d 850 (1980).

have said that a preliminary guide to the meaning of the statute—to the legislative intent—may be found in the interpretation of the statute by DIHLR. *Milwaukee v. ILHR Dept.*, 106 Wis. 2d 254, 257–58, 316 N.W.2d 367 (1982). While the courts are not bound by the department's interpretation of the statute, the department's interpretation is entitled to considerable weight if the interpretation is reasonable and does not conflict with the legislative purpose, the legislative history, prior court decisions or constitutional prohibitions. We examine LIRC's interpretation under this standard.

The purpose of statutory interpretation is to implement the intent of the legislature. The primary source of statutory interpretation is the language of the statute. LIRC relies on the oft stated canon of statutory construction that "on any question of statutory construction, the initial inquiry is to the plain meaning of the statute. If the statute is unambiguous, resort to judicial rules of interpretation and construction is not permitted, and the words of the statute must be given their obvious and intended meaning." *State Historical Society v. Maple Bluff*, 112 Wis. 2d 246, 252–53, 332 N.W.2d 792 (1983). Hansen Trucking urges us to to look to the legislative history of sec. 108.02(3) in interpreting this statute.

Applying the plain meaning rule, the court of appeals refused to look beyond the words of the statute and adopted LIRC's interpretation of the statute. We conclude that sec. 108.02(3) is not as plain as LIRC would have us believe.[6] As we noted above, sec. 108.02(3)(a)

---

[6] This court has observed that "the plain meaning rule is not without exceptions." *State v. Hervey*, 113 Wis. 2d 634, 641, 335 N.W.2d 607 (1983). This court explained the exceptions to the plain meaning rule as follows:

"The effect of the plain meaning rule has been discussed by the U.S. Supreme Court in several of its decisions. For example,

as amended in 1980 no longer states when a hired individual is an employee of the principal. Paragraph (e) does, however, provide that a contractor who is a covered employer is not an employee of the principal. Paragraph (e) presupposes that a contractor may be an employer for purposes of unemployment compensation of individuals it hires. The plain language of sec. 108.02 (3) does not, however, tell us when a hired individual is an employee of the contractor or of the principal. To answer this question we must find the legislative intent by examining the statute's context, scope, legislative history and objective.

To determine legislative intent in this case we first turn to the cases interpreting the pre-1980 version of paragraph (a) and the legislative history of the 1980 amendments.

in *United States v. Dickerson*, 310 U.S. 554, 562 (1940), the Court rejected the argument that a statute's language was clear and, therefore, not subject to other rules of construction: 'It would be anomalous to close our minds to persuasive evidence of intention on the ground that reasonable men could not differ as to the meaning of the words. Legislative materials may be without probative value, or contradictory, or ambiguous, it is true, and in such cases will not be permitted to control the customary meaning of words or overcome rules of syntax or construction found by experience to be workable; they can scarcely be deemed to be incompetent or irrelevant. . . . The meaning to be ascribed to an Act of Congress can only be derived from a considered weighing of every relevant aid to construction.' (Citation and footnote omitted.) *See also, Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10 (1976); *U.S. v. Amer. Trucking Ass'ns*, 310 U.S. 534, 543 (1940)." *State v. Hervey, supra,* 113 Wis. 2d at 641, n. 9.

Professor Hurst summarizes the teachings of these supreme court cases as follows: "If on its face the text supports the position of one contestant, due regard to the text suggests that a substantial burden of persuasion should rest on the opponent to prove that the statute has a different meaning." Hurst, *The Legislative Branch and the Supreme Court*, 5 U. Ark. L.J. 487, 499 (1982). *See also* Hurst, *Dealing with Statutes* 49–50 (1982).

Two cases interpreted the pre-1980 version of paragraph (a) in fact situations involving a principal, a contractor, and a hired individual. In *Price County Telephone Co. v. Lord,* 47 Wis. 2d 704, 177 N.W.2d 904 (1970), the issue was whether the contractor was liable for the unemployment benefits for individuals hired by the contractor. Interpreting sec. 108.02(3) (a), the court acknowledged that although the contractor may have been an employee, the contractor was a covered employer. We held that the hired individual was the employee of the contractor, not the principal, and that the contractor was liable under the act. We concluded that there is nothing in the sec. 108.02(3) to preclude contractors from being employees for purposes of their own employment compensation protection and at the same time being covered employers. We said, "under this statute these two conditions are not mutually exclusive. If it were impossible to be both at the same time then the phrase 'not an employer subject to the contribution provisions of this chapter' in par. (a) would be superfluous."

In *Sears, Roebuck & Co. v. ILHR Dept.,* 90 Wis. 2d 736, 280 N.W.2d 240 (1978), the employee status of both the contractor and the individuals hired by the contractor was in issue. The court held that the contractors were employees of Sears, Roebuck, the principal, within the meaning of sec. 108.02(3) (a). The court rejected, however, arguments forwarded by DILHR that if the contractor was an employee of Sears, Roebuck, so too were the individuals hired by the contractor. Relying on *Price County,* the *Sears* court concluded that if a contractor was a covered employer, then the contractor, and not the principal, would be liable for unemployment benefits payable to hired individuals. Relying on *Price County,* the *Sears* court said that a contractor could be

a covered employer and an employee of the principal at the same time.

Hansen Trucking asserts that Sears, Roebuck sought to amend sec. 108.02(3) to overrule that portion of the *Sears* case that was adverse to Sears, namely, that a contractor who is a covered employer could also be an employee of the principal. According to Hansen Trucking, the 1980 amendments were intended to leave intact the portion of the *Sears* case that was favorable to Sears, Roebuck, namely, that individuals hired by a contractor who is a covered employer are employees of the contractor, not the principal.

Hansen Trucking claims that its description of the objective of the 1980 amendments is supported by a memorandum dated June 27, 1980 (after the 1980 amendments were adopted), from David Pearson, then Chair of the Council on Unemployment Compensation, to U.W. Brandt, Director of the Bureau of Legal Affairs.[7] This memorandum is on file with the Bureau of Legal Affairs of the Unemployment Compensation Division of DIHLR. The Pearson memorandum reveals that the 1980 amendments were brought about through the efforts of Sears' lobbyist, Chris Tackett, and that David Pearson drafted the 1980 amendments intending to provide that contractors who are covered employers and the individuals hired by these contractors are not employees of the

---

[7] The Council on Unemployment Compensation submits recommendations with respect to amendments to chapter 108 to each regular session of the legislature. Sec. 108.14(5), Stats. 1983–84. The 1980 amendments were not initiated by the council. The Pearson memorandum explains that "the language was suggested by the Council's Chairman to the amendment's sponsors and to the Legislative Reference Bureau. In addition, the memorandum states that members of the Council, which had previously opposed the change, each individually had withdrawn that opposition but without endorsing the change."

principal employer. The memorandum sets forth the goal of the 1980 amendments as follows:

"As to the effect of this change, it is now clear that if an individual is a covered employer with respect to certain services provided by that employer's employees (or helpers or assistants, as they are sometimes called) for a principal, neither that individual or his/her employes will be employes of that principal."

In our search of the legislative history of the 1980 amendments in the bill drafting file in the Legislative Reference Bureau, we found information similar to that contained in the Pearson memorandum.[8] The drafting instructions for the 1980 amendments refer to Chris Tackett as the person requesting the draft and to Dave Pearson as being a contact person for the proposal. Furthermore the bill drafting file includes a letter from David Pearson to members of the Council on Unemployment Compensation dated September 28, 1979, apparently referring to the proposed amendments and describing them as follows:

, "In addition, please note the paragraph included in the suggested amendment which deals with the work performed by individuals who are employed by a contractor. On previous occasions, we have discussed the ambiguity of the current provision, 108.03(a), as it relates to coverage of contractor and/or his/her employes. Under this classification, the contractor will not be covered by the employing unit if the contractor is liable for contributions for employees working for him/her."

In determining legislative intent, this court has given weight to the written comments of those involved in drafting the legislation. See *State v. Barkdoll*, 99 Wis.

---

[8] Bill Drafting File to Assembly Substitute 1 to 1979 Assembly Bill 1180, LRB–13134/1, Wisconsin Legislative Reference Bureau, State Capitol, Madison, Wis.

2d 163, 176, 298 N.W.2d 539 (1980); see also *Muench v. Public Service Commission,* 261 Wis. 492, 510–11, 53 N.W.2d 514 (1952).

On review of the *Price County* and *Sears* cases, the Pearson memorandum, the legislative reference bill drafting file, and the language of sec. 108.02(3), we conclude that the legislature intended the amendments to change that part of this court's *Sears* decision that a contractor who was a covered employer could also be an employee of the principal. The legislature did not intend to change that part of the *Price County* and *Sears* decisions that the employee status of individuals hired by the contractor depended on whether the contractor was a covered employer. The legislature repealed the second sentence of paragraph (a) because the court had derived the rule that a contractor could be a covered employer and also an employee of the principal from that language. *Price County, supra* 47 Wis. 2d at 716; *Sears, supra* 90 Wis. 2d at 753. The legislature created paragraph (e) to provide expressly that contractors who are covered employers are not to be considered employees of the principal. In excepting contractors who are covered employers from being considered employees, paragraph (e) contemplates that these contractors will be liable for the unemployment compensation of the individuals they hire.

If we were to accept LIRC's interpretation of sec. 108.02(3), we would be saying that the 1980 amendments broaden the principal's liability to make the principal liable for unemployment compensation benefits to individuals hired by a contractor who is a covered employer. It is unreasonable to assume that the 1980 amendments drafted and proposed at the request of Sears, Roebuck were intended to expand Sears' liability in this manner.

Consequently we conclude that in this case sec. 108.02 (3) (e) mandates an inquiry by LIRC to determine whether Laupp Trucking "is a contractor who, in fulfillment of a contract with an employing unit, employs any individual in employment for which the contractor is subject to the contribution or reimbursement provisions of this chapter." LIRC did not undertake this inquiry in the instant case. Accordingly, we reverse the decision of the court of appeals and remand the matter for proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.